OPINION
{¶ 1} Defendant-appellant Michael Chiolo appeals the May 14, 2004 Judgment Entry of the Stark County Court of Common Pleas ordering forfeiture of appellant's money pursuant to R.C. 2933.42, in favor of plaintiff-appellee the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 20, 2004, a state trooper observed appellant traveling at a high rate of speed on Interstate 77. The trooper conducted a stop, and observed appellant making furtive movements inside the vehicle. The trooper removed appellant from the vehicle and handcuffed him. The trooper frisked appellant and removed $6,022 in cash from his right, front pocket. Later, at the Stark County Jail, an additional $660 in cash was found inside appellant's pants near the crotch area.
 {¶ 3} After the arrest, the trooper performed an administrative search of appellant's vehicle, and found 1300 grams of marijuana in a plastic bag located behind the front passenger seat. The marijuana was later valued at $6,685.
 {¶ 4} Appellant informed the trooper the cash money in his possession was from proceeds of the sale of African American art which he imports.
 {¶ 5} On March 22, 2004, appellant was indicted on one count of possession of marijuana, in violation of R.C. 2925.11(A)(C)(3)(D). Appellant entered a plea of guilty to the charge, and was sentenced to one year in prison.
 {¶ 6} On March 12, 2004 the state filed a complaint for forfeiture of the automobile and of the currency. The state later dismissed the request for forfeiture of the automobile. The trial court conducted a hearing on the motion on May 12, 12004. On May 14, 2004, the trial court ordered the forfeiture of appellant's money in accordance with R.C. 2933.42.
 {¶ 7} Appellant now appeals the May 14, 2004 Judgment Entry of the Stark County Court of Common Pleas, assigning as error:
 {¶ 8} "I. The trial court's decision to forfeit appellant's money was contrary to the manifest weight of the evidence because the State of Ohio failed to demonstrate it was related to the possession of Marijuana."
 I {¶ 9} Appellant maintains the trial court's forfeiture of appellant's money was contrary to the manifest weight of the evidence as the state did not demonstrate the money was related to appellant's possession of marijuana.
 {¶ 10} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 11} The Ohio civil forfeiture statute, R.C. 2925.43, states:
 {¶ 12} "(A) The following property is subject to forfeiture to the state in a civil action as described in division (E) of this section, and no person has any right, title, or interest in the following property:
 {¶ 13} "(1) Any property that constitutes, or is derived directly or indirectly from, any proceeds that a person obtained directly or indirectly from the commission of an act that, upon the filing of an indictment, complaint, or information, could be prosecuted as a felony drug abuse offense or that, upon the filing of a complaint, indictment, or information, could be the basis for finding a juvenile to be a delinquent child for committing an act that, if committed by an adult, would be a felony drug abuse offense;
* * *
 {¶ 14} "(E)(1) The prosecuting attorney of the county in which property described in division (A) of this section is located may commence a civil action to obtain a civil forfeiture under this section by filing, in the court of common pleas of that county, a complaint that requests the issuance of an order of civil forfeiture of the property to the state. Notices of the action shall be served and published in accordance with division (E)(2) of this section.
* * *
 {¶ 15} "4) A hearing shall be held in the civil action described in division (E)(1) of this section * * * Following the hearing, the court shall issue the requested order of civil forfeiture if the court determines that the prosecuting attorney has proven, by clear and convincing evidence, that the property in question is property as described in division (A)(1) or (2) of this section"
 {¶ 16} Turning to the assignment of error, State Trooper Ebie testified at the forfeiture hearing:
 {¶ 17} "Q. Did you have occasion at that time to observe traffic and, if so, what did you observe?
 {¶ 18} "A. I did. And as I was sitting there, ah, I observed a vehicle coming southbound on the southbound onramp from Belden Village Avenue at a very high rate of speed and lose control. It went almost completely sideways on the ramp, came back around and continued on southbound and then came across the lanes of traffic and over into the far left southbound lane to continue southbound 77.
* * *
 {¶ 19} "Q. Ah, at what, did you ever catch up to the vehicle?
 {¶ 20} "A. I did.
 {¶ 21} "Q. And can you tell us what happened and describe that?
 {¶ 22} "A. Yes. Ah, very near the Fulton Road exit, I caught back up to him and I was able to stay with him; we were running well over a hundred miles an hour. Ah, and I could stay with him, but that's all I could do. I couldn't gain or overtake on it.
 {¶ 23} "I was calling all units into position to try to help me get this guy slowed down.
 {¶ 24} "Ah, and he evidently realized there was someone there, didn't — I mean, he didn't know me, but realized there was someone there, because he started slowing down. Didn't hit the brakes, just started slowing down.
 {¶ 25} "I immediately caught up to him, I activated the red lights and we pulled off — it was the right side at 13 Street. Ah, when he began to pullover, from the left lane to the right side near 13th Street, the, there was a single male occupant of the vehicle and he was all over the front seat.
 {¶ 26} "Q. And when you say, "he was all over the front seat," can you describe what you mean by that?
 {¶ 27} "A. Well, the front seat — the back of it was cocked back, a little bit. And I could see that he was scootching up on the seat. He went all the way over into the back seat. He leaned all the way over across the front seat and there was a whole lot of pivotal action inside the car, his furtive movements. I could not tell what he was doing or what he was getting.
 {¶ 28} "Q. You're indicating on the stand an outreaching arm movement. Is that what you observed?
 {¶ 29} "A. Ah, no, his whole body was going over like that and his whole body was leaning into the back, behind the back of the right front seat and in front of that seat and then scootch up in the driver's seat and down. From my vantage point, the two cars are close enough in height, I couldn't see what his arms were doing.
 {¶ 30} "Q. Was your patrol vehicle equipped with a video surveillance system?
 {¶ 31} "A. It is.
 {¶ 32} "Q. And was it activated at the time?
 {¶ 33} "A. Yes, it was activated for part of it. Yes. The furtive movements are visible. As soon as I activated the red lights, everything is on tape after that.
* * *
 {¶ 34} "He was hollering the whole time that his wife was being robbed and beaten. Ah, we got him secured.
 {¶ 35} "And he continued to chatter about his wife being robbed and beaten.
 {¶ 36} "I called Canton Police Department and sent them to the address that he claimed.
 {¶ 37} "I told the defendant, who was under arrest — advised him of his rights, began to do a quick patdown on him.
 {¶ 38} "And he, he changed his story from his wife being beaten and robbed, ah, to his, ah, ah, his girl friend — or no, I'm sorry. Then it went to his fiancee being robbed. And then a few minutes later it went down to him and his girl friend had some bad words on the phone.
 {¶ 39} "Then I called his girl friend and it turns out that she hadn't talked to him in hours or hours, but — so that was just done in an attempt to keep me from arresting him or something, allow him to continue on.
 {¶ 40} "After we read him his — or I read him his rights, ah, I did a quick patdown for weapons. And he had a very large bulge in his right front pocket that he would not permit me to get at closely. Even though he was handcuffed and there was two officers there, ah, front of him was to the patrol car. And every time I tried to pat him, he kept, he'd move his hips and his legs and try to get away from me. And so we had to squelch that activity and then I found out — I reached into his pocket and there was, bigger than my large hands can handle, a wad of cash that I pulled out of his right front pocket.
 {¶ 41} "Q. And was that in, from the pocket that you say he was attempting to prevent you from, ah, investigating?
 {¶ 42} "A. Frisking? Correct.
 {¶ 43} "Q. Frisking. Were you able to determine at any time how much currency that was?
 {¶ 44} "A. I was.
 {¶ 45} "Q. How much was that?
 {¶ 46} "A. $6,022 and there was also a quarter rolled in with it.
 {¶ 47} "Q. Was that in his pocket that you pulled out?
 {¶ 48} "A. That was in his right front pocket.
 {¶ 49} "Q. Ah, was there additional moneys ever later discovered on him?
 {¶ 50} "A. Correct. There were.
 {¶ 51} "Q. Ah, at what point were additional moneys discovered?
 {¶ 52} "A. Okay. Ah, he would — when we took him out to the Stark County Jail and he was being processed or incarcerated there. Part of their process is a very complete body search. And when they got into his crotch area, they removed $660 worth of cash from inside his pants, in his crotch.
 {¶ 53} "Q. From inside his pants. So that was not part of what you were able to, ah, what you were able to find on the initial frisk?
 {¶ 54} "A. That is correct, sir. I secured $6,022.25 from his right front pocket. And $660 in cash, even currency, was removed from the crotch of his pants." Tr. at 7-14.
 {¶ 55} Upon review, appellant was observed traveling at an extremely high rate of speed and losing control of his vehicle. Trooper Ebie observed appellant making furtive bodily movements in both the front and back of the car, and "scootching" in the seat. A large amount of cash was found on appellant's person, which appellant tried to conceal from the officers by moving back and forth while being searched. Later, additional moneys were found in the crotch area of appellant's pants. Upon review, the trial court could reasonably infer from the facts in evidence the money in question was property subject to forfeiture pursuant to R.C.2925.43(A)(1).
 {¶ 56} Therefore, the May 14, 2004 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
Hoffman, J. Boggins, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the May 14, 2004 Judgment Entry of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.